BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**AMY E. POTTER**
amy.potter@usdoj.gov
Assistant United States Attorney
405 E. 8th Street, Suite 2400
Eugene, Oregon  97401-2708
Telephone:    541-465-6771
Attorneys for the United States

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | 6:19-cv-00707-BR |
| Plaintiff, | |
| v. | **COMPLAINT,** *in rem*, **FOR FORFEITURE** |
| **$2,457,790.72 in Funds seized from JPMorgan Chase Bank account #xxx0905;** **$1,266,650.00 in Funds seized from JPMorgan Chase Bank account #xxx3511;** **$1,383.68 in Funds seized from JPMorgan Chase Bank account #xxx2125;** **$200,653.71 in Funds seized from JPMorgan Chase Bank account #xxx8881;** **$32,921.00 US Currency;** **$1,940.77 US Currency;** **31.53810677 BTC;** **1,022.39066800 ETH; and** **5.74017141 BCH;** *in rem*, | |
| Defendants. | |

Plaintiff, United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, and Amy E. Potter Assistant United States Attorney, for its complaint *in rem* for forfeiture, alleges:

**Complaint** *in rem* **for Forfeiture**                                                                                           Page 1

I.

This Court has subject matter jurisdiction, *in rem* jurisdiction, and venue pursuant to 31 U.S.C. § 5324; 28 U.S.C. §§ 1345, 1355, 1356, and 1395; and 19 U.S.C. § 1610.

II.

Defendants, *in rem*, $2,457,790.72 in funds seized from JPMorgan Chase Bank account #xxx0905; $1,266,650.00 in funds seized from JPMorgan Chase Bank account #xxx3511; $1,383.68 in funds seized from JPMorgan Chase Bank account #xxx2125; $200,653.71 in funds seized from JPMorgan Chase Bank account #xxx8881; $32,921.00 US Currency; $1,940.77 US Currency; 31.53810677 BTC; 1,022.39066800 ETH; and 5.74017141 BCH (hereinafter "Assorted Funds"); were seized in the District of Oregon, and are now and during the pendency of this action will be within the jurisdiction of this Court.

III.

Defendants, *in rem*, Assorted Funds, represent proceeds traceable to a violation of 18 U.S.C. § 2319 (Copyright Infringement), thereby subjecting them to forfeiture pursuant to 18 U.S.C § 2323 and 18 U.S.C. § 981(a)(1)(C), as more particularly set forth in the declaration of Keith Druffel, Special Agent, Internal Revenue Service-Criminal Investigations, marked as Exhibit A, attached and fully incorporated herein by this reference.

IV.

Defendants, *in rem*, Assorted Funds, also represent property involved in a transaction in violation of 18 U.S.C. § 1957 (Money Laundering), thereby subjecting them to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as more particularly set forth in the declaration of Keith

Druffel, Special Agent, Internal Revenue Service-Criminal Investigations, marked as Exhibit A, attached and fully incorporated herein by this reference.

WHEREFORE, plaintiff, United States of America, prays that due process issue to enforce the forfeiture of defendants, *in rem*, Assorted Funds; that due notice be given to all interested persons to appear and show cause why forfeiture of these defendants, *in rem*, should not be decreed; that due proceedings be had thereon; that these defendants be forfeited to the United States; that the plaintiff United States of America be awarded its costs and disbursements incurred in this action.

Respectfully submitted this 6th day of May 2019.

BILLY J. WILLIAMS
United States Attorney

*s/ Amy E. Potter*
AMY E. POTTER
Assistant United States Attorney

VERIFICATION

I, KEITH DRUFFEL declare, under penalty of perjury, pursuant to the provisions of 28 U.S.C. Section 1746, that I am a Special Agent with the Internal Revenue Service-Criminal Investigations and that the foregoing Complaint *in rem* for Forfeiture is made on the basis of information officially furnished and upon the basis of such information the Complaint *in rem* for Forfeiture is true as I verily believe.

*s/ Keith Druffel*
KEITH DRUFFEL
Special Agent
Internal Revenue Service-Criminal Investigations

## DECLARATION of KEITH DRUFFEL

I, KEITH DRUFFEL, do hereby declare:

### BACKGROUND/EXPERIENCE

1. I am a Special Agent of the Internal Revenue Service-Criminal Investigations (IRS-CI) assigned to the Eugene, Oregon Post of Duty, and have been so employed since 2007. As a Special Agent, I investigate possible violations of the Internal Revenue Code (Title 26 United States Code), the Money Laundering Control Act (Title 18 United States Code), the Bank Secrecy Act (Title 31 United States Code), and other criminal violations.

### PURPOSE OF DECLARATION

2. This declaration is submitted in support of a complaint *in rem* seeking forfeiture of the funds in the following JP Morgan Chase Bank accounts as well as the currency and cryptocurrency[1] listed below:

   a. $2,457,790.72 seized from Chase Platinum Business Checking account ending in 0905, in the name of Viral Sensations Inc.

   b. $1,266,650.00 seized from Chase Platinum Business Checking account ending in 3511, in the name of Viral Sensations Inc.

---

[1] Cryptocurrency" (also known as "digital currency") is generally defined as an electronically sourced unit of value that can be purchased with, sold for, or used as a substitute for fiat currency (i.e., currency created and regulated by a government). Bitcoin ("BTC") is a type of cryptocurrency. Users store their cryptocurrencies in digital "wallets," which are identified by unique electronic "public addresses." A wallet essentially stores the access code that allows an individual to conduct cryptocurrency transactions. A cryptocurrency address is represented as a case-sensitive string of letters and numbers. Each cryptocurrency wallet contains a private key, which acts as a digital verification of ownership. Only the holder of the private key can authorize any transfers of digital currency.

**Declaration of Keith Druffel**                                         EXHIBIT A   PAGE 1

c. $1,383.68 seized from Chase Platinum Business Checking account ending in 2125, in the name of Viral Sensations Inc.

d. $200,653.71 seized from Chase Premier Platinum Checking account ending in 8881, in the name of Talon V. White.

e. $32,921.00 in US Currency seized during the execution of a search warrant at Talon White's house.

f. $1,940.77 in US Currency from the Stripe[2] account belonging to Talon White.

g. 31.53810677 BTC (Bitcoin, a form of cryptocurrency) seized from Talon White's Coinbase[3] account.

h. 1,022.39066800 ETH (Ethereum, a form of cryptocurrency) seized from Talon White's Coinbase account.

i. 5.74017141 BCH (Bitcoin Cash, a form of cryptocurrency) seized from Talon White's Coinbase account.

These accounts, currency, and cryptocurrency represent proceeds traceable to violations of 18 U.S.C. § 2319 (Copyright Infringement), thereby subjecting them to forfeiture pursuant to 18 U.S.C § 2323 and 18 U.S.C. § 981(a)(1)(C).

3. In addition, because White used over $10,000 to purchase certain cryptocurrency, those accounts are property involved in transactions in violation of 18 U.S.C. § 1957 (Money Laundering), thereby subjecting them to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

---

[2] Stripe is a United States based technology company which allows both private individuals and businesses to accept payments over the internet, similar to PayPal

[3] Coinbase is a virtual currency exchange based in San Francisco, California.

**Declaration of Keith Druffel**                                              EXHIBIT A   PAGE 2

4. Based on evidence obtained in this investigation, including White's e-mails, declarations from the Motion Picture Association of America (hereinafter "MPAA"), federal tax return information, bank records, and property title records, there is probable cause to believe, and I do believe, that beginning in at least 2013 and continuing to the present, White engaged in a scheme with other known and unknown co-conspirators to reproduce and distribute copyrighted material, including motion pictures and television broadcasts, for the purpose of personal financial gain by making it available on a computer network accessible to members of the public by subscription. The subscription fees, which represent the proceeds of the copyright infringement, were processed through PayPal and Stripe accounts associated with White and then deposited into various bank accounts controlled by White. One particular bank account, a Wells Fargo account ending in 5111, received over $1,400,000.00 in criminal proceeds. Proceeds from these bank accounts were then used to purchase, among other things, cryptocurrency and real property.

5. The information contained in this declaration is based on my personal knowledge, as well as information obtained from other law enforcement personnel and from my review of financial records. The information set forth here is provided solely for the purpose of establishing probable cause in support of the seizure and therefore, it does not include each and every fact that I or others have learned during the course of this investigation.

## SUMMARY OF THE INVESTIGATION

6. In October 2013, Homeland Security Investigation (HSI) agents received information from PayPal regarding websites identified as www.noobroom.com and www.noobroom7.com that allowed subscribers to stream and download copyrighted movies and television shows. HSI agents contacted the MPAA regarding these websites, requesting they open an investigation to

**Declaration of Keith Druffel**                                                    EXHIBIT A   PAGE 3

determine if the websites were authorized by member studios to offer the copyrighted content to subscribers. The MPAA assists the motion picture and television industry to protect their intellectual property rights, including copyrights. Specifically, the MPAA monitors the illegal reproduction and distribution of American motion pictures and television programs.

7. In November 2013, the MPAA provided a report of their investigation to HSI. According to the MPAA report, www.noobroom7.com and its associated websites www.noobroom5.com and www.noobroom9.com (hereinafter referred to collectively as "Noobroom") were distributing, without authorization from the copyright holder, motion pictures and television shows that are protected by United States copyrights. The MPAA determined that many of the movies available on Noobroom were from member studios and that Noobroom was not authorized to allow the content to be downloaded or streamed. The MPAA reported that Noobroom generated revenue through the sale of subscriptions which allowed users to either stream or download copyrighted content.

8. The MPAA reported that Noobroom not only received revenue from subscription payments from users of the websites, but also received revenue from advertisements placed on its webpages by a company identified as Lanista Concepts (hereinafter "LC"). The subscription payments were being processed through Stripe.

9. On July 17, 2014, the MPAA sent an e-mail to noobdmitri@gmail.com and donutdmitri@gmail.com, two contact e-mails for Noobroom, directing them to cease and desist operating the illegal website. The content of the e-mail notified the operator of Noobroom that they were violating copyright laws and requested they take immediate steps to address the copyright infringement of MPAA Member Studios' motion pictures and television programs. Attached to the letter was a list of motion pictures and television programs being used illicitly by

Noobroom that were owned or controlled by MPAA Member Studios. Approximately five days after the MPAA sent the cease and desist letter to Noobroom, the MPAA received an e-mail to its undercover subscription at Noobroom. The e-mail was from noreply@noobroom.com with the subject, "Noobroom Important Update." The e-mail advised that user accounts had been moved to a new website, www.superchillin.com (hereinafter "Superchillin").

10. HSI agents were able to download movies from Superchillin and obtained IP address information while downloading those movies. With this information, they identified the company hosting the servers used by Superchillin as Hosting Services Inc. The account associated with the IP addresses was held in White's name and included a phone number associated with White.

11. Through additional investigative efforts, two more sites linked to White were identified — Movietv.to and Sit2play.com (Movietv and Sit2play). In June 2016, HSI agents attempted to login to Movietv and were redirected to Sit2play, which accepted the login information for Movietv. Sit2play appeared to be a near mirror image of Movietv in both content and appearance. In 2017, HSI Agents attempted to renew the subscription to Movietv and found the Movietv address had a notification posted that the site was moved to Sit2play. The registrant, technical, administrative, and billing contacts for Sit2play were listed as White, with company "NB" and e-mail address heyitstalon@hotmail.com, an email the investigation determined belonged to White.

12. HSI agents downloaded content from Superchillin, Movietv, and Sit2play throughout 2016 through November 2018 (when the search and seizure warrants were executed). The MPAA reported that the subject websites listed above were distributing, without authorization from the copyright holder, motion pictures and television shows that are protected by U.S.

Copyrights. The MPAA determined that many of the movies available on the subject websites were from member studios and that the subject websites were not authorized to allow the content to be downloaded or streamed. The MPAA reported that the subject websites generated revenue through the sale of subscriptions which allowed users to either stream or download copyrighted content. Also, the MPAA advised that the content downloaded by HSI contained copyrighted material and the MPAA provided certification as such.

**Financial Analysis**

13. Based on financial records obtained during the investigation, I determined that White received substantial revenue from the above-listed websites. In 2018, he was averaging revenue over $500,000 per month. In 2017, White received over $2.2 million. In 2016, White received over $1 million in revenue, and in 2014 and 2015, White received on average about $400,000 a year in revenue.

14. Subscribers to the various websites run by White paid for their subscriptions via Paypal or Stripe. Those payments were then deposited into bank accounts controlled by White. A financial analysis was conducted of all of those accounts and confirmed that money in those accounts was received from Stripe or Paypal or other bank accounts that received those funds. For this reason and for the reasons that follow, I believe those funds constitute the proceeds of the copyright infringement.

15. Stripe provided information related to White's Stripe account that accepted subscription payments. The bank account, phone number, and email address provided matched White's information. The product description for the account was listed as "Selling stock tip subscriptions via email." I have found no evidence he was engaged in selling stock tips.

16. Investigators reviewed payments received into the Stripe account from October 5, 2015 to December 25, 2016. There were 78,985 payments received in the amount of $9.99 for a total of $789,060.15; 7,611 payments received in the amount of $25.49 for a total of $194,004.39; and 5,348 payments received in the amount of $44.99 for a total of $240,606.52, for a grand total of $1,223,671.24. The above-listed amounts correspond to the listed subscription costs on Sit2Play and Movietv. Therefore, I believe the payments received by Stripe are the subscription fees for the websites.

17. Payments into White's Stripe account were also reviewed for the timeframe of October 1, 2016 to September 20, 2018 (a separate set of records that were received). There were 302,905 payments in the amount of $9.99 totaling $3,026,020.95, 45,050 payments in the amount of $25.49 totaling $1,148,324.50, and 48,888 payments in the amount of $44.99 totaling $2,199,471.12. The total amount of the above listed payments into White's Stripe account was $6,373,816.57. The above listed amounts correspond to the cost of subscriptions to the websites and represent proceeds from the violation of 18 USC § 2319, Criminal Copyright Infringement.

18. Further review of White's Stripe account showed that through August 2018, over $3 million was transferred from the Stripe account to White's Wells Fargo account 5111 and to the JP Morgan Chase Bank account 0905 in the name of Viral Sensations, Inc.

19. Viral Sensations, Inc., (VSI) was incorporated in Nevada on March 31, 2017. Entity number E0155832017-8 was assigned to VSI. No officer names were listed. On April 4, 2017, White opened three checking accounts in the name of VSI, including Chase Platinum Business Checking account ending in 0905, Chase Platinum Business Checking account ending in 3511, and Chase Platinum Business Checking account ending in 2125. White had sole signature authority on the accounts. The primary business ID number listed on the signature card was

E0155832017. Although White did not include the -8 on the signature card, a search of Nevada Secretary of State Corporate Records for entity number E0155832017 listed VSI as the only entity assigned that number.

20. Deposits into the VSI account ending in 0905 from account opening through August 31, 2018 exceeded $5.9 million. Deposits included a Wells Fargo Bank cashier's check in the amount of $566,292.04 payable to Talon V. White that was purchased by Talon V. White with funds in his Wells Fargo Bank account. As stated above, funds deposited into White's Wells Fargo Bank account consisted of subscriptions to the movie websites established by White and from transfers from other bank accounts established by White that received proceeds from the movie subscription websites. Subsequent deposits into the Chase 0905 account from Stripe have been identified as proceeds from subscriptions to the websites described above. Deposits from Stripe often exceeded $100,000 per deposit.

21. Withdrawals from the Chase 0905 account include over $1 million used to purchase cryptocurrency through Coinbase, a virtual currency exchange. Transfers to Coinbase often exceeded $10,000 per transaction. For example, on August 21, 2018, $25,000 was transferred from account 0905 to Coinbase for the purchase of cryptocurrency.

22. The balance in the VSI account ending in 3511 on November 12, 2018, was $1,266,650.00. Deposits consisted of transfers from the VSI account 0905 described above. Between October 2017 and August 2018, White transferred approximately $1,277,000 from the 0905 account to the 3511 account.

23. The balance in the VSI account ending in 2125 on November 12, 2018, was $1,383.68. Deposits into the account included deposits from PayPal. The only known source of PayPal deposits into White's bank accounts was from the movie subscription websites.

24. On March 31, 2017, White opened Chase Premier Platinum Checking account ending in 8881. White had sole signature authority on the account. On the day the account was opened, White deposited a Wells Fargo Bank cashier's check in the amount of $419,367.52 payable to Talon V. White that was purchased by Talon V. White with funds in his Wells Fargo Bank account. As stated above, funds deposited into White's Wells Fargo Bank account consisted of subscriptions to the movie websites established by White and from transfers from other bank accounts established by White that received proceeds from the movie subscription websites. The balance in the 8881 account on November 12, 2018, was $200,653.71.

### *Purchase of Cryptocurrency*

25. A further review of the Viral Sensations JP Morgan Chase Account 0905 revealed that beginning on or around June 2017, there were numerous electronic withdrawals made to Coinbase Inc., a virtual currency exchange based in San Francisco, California. The JP Morgan Chase Account 0905 was linked to White's Stripe account that received subscription payments from the websites selling unlawful subscriptions to copyrighted material.

26. White opened a Coinbase account ending in 749c112 on May 24, 2017 with subscriber listed as Talon White, at his known address in Newport, Oregon and email of heyitstalon@hotmail.com. From May 25, 2017 through August 2018, White's Coinbase account received approximately 120 ACH deposits from his Chase 0905 account totaling $384,555.10. The last ACH deposit into this account was on December 9, 2017. Coinbase showed that White purchased Bitcoin, Bitcoin cash, Litecoin, and Ethereum cryptocurrencies with the ACH deposits.

27. Further review of White's Coinbase account history reveals that White purchased 78.93162817 BTC. White's Coinbase account also purchased Bitcoin Cash in the amount of

5.74017141 (equivalent to $3,134.33), Litecoin of at least 1210.347482 (equivalent to $72,899.23), and 1022.390668 ETH (Ethereum) from Coinbase. This cryptocurrency was purchased with funds from one of the bank accounts discussed above or through the exchange of other cryptocurrency.

*Search and Seizure Warrants*

28. On November 13, 2018, Mustafa Kasubhai, United States Magistrate Judge for the District of Oregon, approved a search and seizure warrant allowing the search of Talon White's residence and seizure up to the following amounts in the accounts subject to forfeiture in this affidavit:

   a. Up to $5,900,000.00 contained in Chase Platinum Business Checking account ending in 0905 in the name of Viral Sensations Inc.

   b. Up to $1,420,223.00 contained in Chase Platinum Business Checking account ending in 3511 in the name of Viral Sensations Inc.

   c. Up to $90,000 contained in Chase Platinum Business Checking account ending in 2125 in the name of Viral Sensations Inc.

   d. Up to $419,367.52 contained in Chase Premier Platinum Checking account ending in 8881 in the name of Talon V. White.

   e. Up to $8,029,933.72 contained in White's Stripe account.

   f. Up to 78.93162817 Bitcoin from Talon White's Coinbase account

   g. Up to 5.74017141 Bitcoin Cash from Talon White's Coinbase account.

   h. Up to 1022.390668 Ethereum, from Talon White's Coinbase account.

29. On November 15, 2018, the search warrant was executed at Talon White's residence in Newport, Oregon. During the search, agents located $1,521 in White's wallet, $5,200 in a nightstand, and $26,200 in a safe, for a total seizure of $32,921 in U.S. Currency.

30. On November 15, 2018, the seizure warrants were served on the various accounts and the amounts seized from each account, which are listed in paragraph 3, are the amounts that the subject to forfeiture in this civil complaint.

## CONCLUSION

31. Based on the above, I have probable cause to believe, and I do believe, that White and others known and unknown were involved in a conspiracy to commit copyright infringement and money laundering, in violation of 18 U.S.C. §§ 1957 and 2319 from at least 2013 through November 2018.

32. I believe that proceeds from the copyright infringement were deposited, either directly or indirectly, into JP Morgan Chase Bank accounts under the sole signature authority of White, and that all funds in VSI Chase Performance Business Checking account ending in 0905, VSI Chase Platinum Business Checking account ending in 3511, Chase Platinum Business Checking account ending in 2125 and White Chase Premier Platinum Checking account ending in 8881, the cryptocurrency accounts and the currency seized from his house are proceeds from criminal copyright infringement, and, as such, are subject to forfeiture pursuant to pursuant to 18 U.S.C. § 2323 and 18 U.S.C. § 981(a)(1)(C).

33. In addition, because White used over $10,000 to purchase certain cryptocurrency, those accounts are property involved in a transaction in violation of 18 U.S.C. § 1957 (Money Laundering), and, as such, are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

Executed this 6th day of May, 2019.

_____
Keith Druffel
Special Agent
IRS-CI

℅ JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ❐ 1  U.S. Government Plaintiff
- ❐ 2  U.S. Government Defendant
- ❐ 3  Federal Question (U.S. Government Not a Party)
- ❐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                                   and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❐ 1 | ❐ 1 | Incorporated *or* Principal Place of Business In This State | ❐ 4 | ❐ 4 |
| Citizen of Another State | ❐ 2 | ❐ 2 | Incorporated *and* Principal Place of Business In Another State | ❐ 5 | ❐ 5 |
| Citizen or Subject of a Foreign Country | ❐ 3 | ❐ 3 | Foreign Nation | ❐ 6 | ❐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❐ 610 Agriculture | ❐ 422 Appeal 28 USC 158 | ❐ 400 State Reapportionment |
| ❐ 120 Marine | ❐ 310 Airplane | ❐ 362 Personal Injury - Med. Malpractice | ❐ 620 Other Food & Drug | ❐ 423 Withdrawal 28 USC 157 | ❐ 410 Antitrust |
| ❐ 130 Miller Act | ❐ 315 Airplane Product Liability | ❐ 365 Personal Injury - Product Liability | ❐ 625 Drug Related Seizure of Property 21 USC 881 | | ❐ 430 Banks and Banking |
| ❐ 140 Negotiable Instrument | ❐ 320 Assault, Libel & Slander | ❐ 368 Asbestos Personal Injury Product Liability | ❐ 630 Liquor Laws | **PROPERTY RIGHTS** | ❐ 450 Commerce |
| ❐ 150 Recovery of Overpayment & Enforcement of Judgment | ❐ 330 Federal Employers' Liability | | ❐ 640 R.R. & Truck | ❐ 820 Copyrights | ❐ 460 Deportation |
| ❐ 151 Medicare Act | ❐ 340 Marine | **PERSONAL PROPERTY** | ❐ 650 Airline Regs. | ❐ 830 Patent | ❐ 470 Racketeer Influenced and Corrupt Organizations |
| ❐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ❐ 345 Marine Product Liability | ❐ 370 Other Fraud | ❐ 660 Occupational Safety/Health | ❐ 840 Trademark | ❐ 480 Consumer Credit |
| | ❐ 350 Motor Vehicle | ❐ 371 Truth in Lending | ❐ 690 Other | | ❐ 490 Cable/Sat TV |
| ❐ 153 Recovery of Overpayment of Veteran's Benefits | ❐ 355 Motor Vehicle Product Liability | ❐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ❐ 810 Selective Service |
| ❐ 160 Stockholders' Suits | ❐ 360 Other Personal Injury | ❐ 385 Property Damage Product Liability | ❐ 710 Fair Labor Standards Act | ❐ 861 HIA (1395ff) | ❐ 850 Securities/Commodities/ Exchange |
| ❐ 190 Other Contract | | | ❐ 720 Labor/Mgmt. Relations | ❐ 862 Black Lung (923) | ❐ 875 Customer Challenge 12 USC 3410 |
| ❐ 195 Contract Product Liability | | | ❐ 730 Labor/Mgmt.Reporting & Disclosure Act | ❐ 863 DIWC/DIWW (405(g)) | ❐ 890 Other Statutory Actions |
| ❐ 196 Franchise | | | | ❐ 864 SSID Title XVI | ❐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❐ 740 Railway Labor Act | ❐ 865 RSI (405(g)) | ❐ 892 Economic Stabilization Act |
| ❐ 210 Land Condemnation | ❐ 441 Voting | ❐ 510 Motions to Vacate Sentence | ❐ 790 Other Labor Litigation | | ❐ 893  Environmental Matters |
| ❐ 220 Foreclosure | ❐ 442 Employment | **Habeas Corpus:** | ❐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ❐ 894 Energy Allocation Act |
| ❐ 230 Rent Lease & Ejectment | ❐ 443 Housing/ Accommodations | ❐ 530 General | | ❐ 870 Taxes (U.S. Plaintiff or Defendant) | ❐ 895 Freedom of Information Act |
| ❐ 240 Torts to Land | ❐ 444 Welfare | ❐ 535 Death Penalty | **IMMIGRATION** | ❐ 871 IRS—Third Party 26 USC 7609 | ❐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ❐ 245 Tort Product Liability | ❐ 445 Amer. w/Disabilities - Employment | ❐ 540 Mandamus & Other | ❐ 462 Naturalization Application | | |
| ❐ 290 All Other Real Property | ❐ 446 Amer. w/Disabilities - Other | ❐ 550 Civil Rights | ❐ 463 Habeas Corpus - Alien Detainee | | ❐ 950 Constitutionality of State Statutes |
| | ❐ 440 Other Civil Rights | ❐ 555 Prison Condition | ❐ 465 Other Immigration Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

- ❐ 1 Original Proceeding
- ❐ 2 Removed from State Court
- ❐ 3 Remanded from Appellate Court
- ❐ 4 Reinstated or Reopened
- ❐ 5 Transferred from another district (specify)
- ❐ 6 Multidistrict Litigation
- ❐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing  (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

❐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:**   ❐ Yes   ❐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____  DOCKET NUMBER _____

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT #  _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____